Scottlynn J Hubbard IV, SBN 212970
**Disabled Advocacy Group, APLC**
12 Williamsburg Lane
Chico, California 95926
Telephone: (530) 895-3252
Facsimile: (530) 894-8244

Attorneys for Plaintiff

United States District Court

Eastern District of California

| | |
|---|---|
| Kim Mihan, | Case No. |
| Plaintiff, | **Plaintiff's Complaint** |
| vs. | |
| The Regents of the University of California; University of California, Davis; University of California Davis Plastic and Reconstructive Surgery Center; UC Davis Health System Department of Otolaryngology; Greater Sacramento Otolaryngology Society, | |
| Defendants. | |

Complaint

Page 1

## SUMMARY

1. This is a civil rights action by plaintiff Kim Mihan ("Mihan") for discrimination at the University of California Davis Plastic and Reconstructive Surgery Center located at 3301 C Street, Sacramento, California and University of California Davis Medical Center located at 2315 Stockton Boulevard, Sacramento, California (referred to collectively as "the Hospital").

2. Mihan seeks damages, injunctive and declaratory relief, attorney fees and costs, against defendants, pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, Section 504 of the Rehabilitation Act of 1973 ("Rehab Act") 29 U.S.C. § 701, *et seq.*, and related California statutes.

## JURISDICTION

3. This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343 for claims brought under the ADA, Rehab Act, and state law claims that "arise under" federal law because Mihan's right to relief under those claims necessarily depend on resolving a substantial question of federal law.

4. Supplemental jurisdiction for claims brought under parallel California law – arising from the same nucleus of operative facts – is predicated on 28 U.S.C. § 1367.

5. Mihan's claims are authorized by 28 U.S.C. §§ 2201 and 2202.

## VENUE

6. All actions complained of herein take place within the jurisdiction of the United States District Court, Eastern District of California, and venue is invoked pursuant to 28 U.S.C. § 1391(b), (c).

**PARTIES**

7. Kim Mihan is deaf and has been since birth. Her primary form of communication is American Sign Language. She is fluent in English, both written and spoken.

8. Mihan relies on qualified sign language interpreters (or similar interpreters) to discuss symptoms with medical personnel, and to understand the physician's presentation of diagnosis and treatment options.

9. Mihan is disabled under both state and federal law.

10. The Regents of the University of California is a California Corporation that controls the University of California, Davis, and thus, the Hospital.

11. University of California, Davis is a California non-profit public benefit corporation that owns and operates the Hospital.

12. The Hospital is a "service establishment," as the term is described in ADA § 301, that provides medical services to the public. The Hospital is intended for nonresidential use and its operations affect commerce.

13. University of California, Davis Department of Otolaryngology is a division of the University of California, Davis, a California non-profit public benefit corporation that owns and operates the Hospital.

14. Greater Sacramento Otolaryngology Society is a California Corporation that operates parts of the Hospital.

**FACTS**

15. In April 2015, Mihan met with Dr. Stevenson, who would later perform her surgery at the Hospital. During that meeting, she realized that she would need to use an interpreter to communicate effectively with the doctor and the Hospital staff. After some confusion regarding the interpreter and the interpreting process, the ADA Office at the Hospital confirmed with Mihan that

an interpreter would be available to her throughout all phases of her surgery and hospitalization.

16.  On May 26, 2015, Mihan spoke via Video Relay System to Patient Relations at the Hospital. Again, she confirmed with Hospital staff that an interpreter had been arranged.

17.  The next day, Mihan arrived at the Hospital for her surgery, accompanied by her mother. A nurse began to review her information and go over her chart. The nurse required important and detailed information from Miahn and showed her various forms and other important documents. When Mihan inquired about the promised and confirmed interpreter, the staff informed her that the Admission Desk did not require an interpreter, and continued with the admission process attempting to communicate with Mihan through her mother.

18.  Mihan is able to read lips and has a cochlear implant, however these are not the most effective forms of communication for her. When complex and important information is being relayed to her, Mihan must rely on American Sign Language to effectively communicate. This means that, in order to fully understand medical information and her procedure, she required the use of a qualified ASL interpreter.

19.  Sometime later, after a very uncomfortable and strained check-in process, an interpreter came to Mihan's aid and allowed her to effectively communicate with Hospital staff. At or around 12:30 pm, Mihan was told that, even though she had not yet spoken with the anesthesiologist (who was delayed by a prior surgery), the interpreter had to go on break.

20.  A short time after that, a nurse came in to Mihan's room to inquire about the results of a test. Again, there was no interpreter available, so the Hospital staff attempted to communicate with Mihan through her mother. When

Mihan inquired about an interpreter, the nurse stated that the interpreter had gone home.

21.  Mihan did not see or have access to a qualified ASL interpreter for the duration of the day.

22.  After her surgery was completed, a string of doctors and nurses came to Mihan's room to check on her. Even though she and her mother had requested an interpreter many times, every Hospital staff member requested that she try to read lips, and if she did not understand them they would turn to her mother. The Hospital staff knew that Mihan needed an interpreter when they were communicating with her. Even so, they continued to enter her room shortly after surgery, while she was recovering from anesthesia, and tried to present her important and complex medical information. At no time did any of the Hospital staff attempt to arrange for an interpreter.

23.  Mihan and her mother again implored the Hospital staff to call for an interpreter, so she could understand the information that was being communicated. The Hospital staff continued to ignore their requests and continued to require Mihan to attempt to read lips or write on a tablet throughout the night. At no time during the night did any Hospital staff member attempt to obtain an interpreter to communicate with her.

24.  When it came time to discharge Mihan, she again was not provided with an interpreter. The process was completed by attempting to communicate with Mihan through her mother. She remained confused and unsure about the events happening around her, and was then told that she could return to her room and prepare to leave. A nurse accompanied Mihan back to her room, and attempted to explain the discharge documents. Again, she did not understand him and asked for an interpreter. After another ten minutes, an interpreter was found and came to Mihan's room to explain the documents to her. This was only the

second, brief time in two days that she was able to communicate through an interpreter.

25. Because the Hospital did not have qualified interpreters available at all times, Mihan was denied effective communication with medical personnel when: (1) discussing her symptoms and medical condition, medications, and medical history; (2) explaining and describing medical conditions, tests, treatment options, medications, surgery and other procedures; (3) providing a diagnosis, prognosis, and recommendation for treatment; (4) obtaining informed consent for treatment; and (5) communicating with her during treatment, testing, and physician's examinations.

26. The lack of a qualified sign language interpreter interfered with – if not outright denied – Mihan's ability to use and enjoy the goods, services, privileges, and accommodations offered at the Hospital.

## FIRST CLAIM

### Americans with Disabilities Act of 1990

<u>Denial of Public Services</u>

27. Title II of the ADA holds that: Subject to the provisions of this title, no qualified individual with a disability shall (by reason of such disability) be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.[1]

28. Defendants discriminated against Mihan by denying full and equal enjoyment to the Hospital's services, programs, and activities.

29. To date, Defendants have not made the Hospital readily accessible under Title II of the ADA.

---

[1] 42 U.S.C. §12132

Complaint

Page 6

30. Mihan seeks all relief available under the ADA to address these violations.[2]

31. Mihan also seeks attorney fees and costs under the ADA [3].

### Denial of "Full and Equal" Enjoyment and Use

32. Title III of the ADA holds as a "general rule" that no individual shall be discriminated against on the basis of disability in the full and equal enjoyment (or use) of goods, services, facilities, privileges, and accommodations offered by any person who owns, operates, or leases a place of public accommodation. 42 U.S.C. § 12182(a).  Here, Defendants discriminated against Mihan by denying her the same "full and equal" enjoyment and use of the hospital as able-bodied patrons, who can effortlessly communicate with hospital personnel without difficulty. Defendants thus violated the ADA.

### Failure to Provide Auxiliary Aids and Services

33. The ADA also requires a facility to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter their nature or would result in an undue burden. 42 U.S.C. § 12182(b)(2)(A)(iii).  Here, Defendants violated the ADA by failing to take steps (*i.e.*, providing a sign language interpreter) to ensure that no individual with a disability is treated differently, when these steps were necessary to afford full and equal enjoyment and use of the Hospital.[4]

---

[2] 42 U.S.C. §12133
[3] 42 U.S.C. §12205
[4.] *Ariz. ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670-71 (9th Cir. 2010) (discussing auxiliary audio aids).

Complaint

Page 7

Remedies

34. Mihan seeks all relief available under the ADA (i.e., injunctive relief, attorney fees, costs, legal expense) for these aforementioned violations. 42 U.S.C. §§ 12133, 12188(a)(1), 12205.

35. Mihan does not seek injunctive relief that does not relate to her disability.

## SECOND CLAIM

### Section 504 of the Rehabilitation Act of 1973

36. Section 504 of the Rehab Act provides that "no otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

37. Section 504 of the Rehab Act imposes the same obligations and liabilities on entities as Title II of the ADA.[5]

38. Defendants receive federal funding.

39. Defendants knowingly discriminated against Mihan based on the aforementioned acts (and omissions) at the Hospital – *e.g.*, failing to provide a sign language interpreter.

40. These acts and omissions resulted in unequal access to the programs, services, and activities for the disabled.

41. Solely by reason of her disability, Mihan has been excluded from participation in, denied the benefit of, and subjected to discrimination in her attempts to receive full and equal access to the services offered at the Hospital.

---

[5] *Wong v. Regents of the Univ. of California*, 192 F.3d 807, 811, n.2 (9th Cir. 1999).

Complaint

42. Defendants thus violated Mihan's rights under the Rehab Act by denying her participation in, benefits of, and subjecting her to, discrimination in the Hospital's programs and activities.

43. Mihan seeks actual damages, reasonable attorney fees and costs under the Rehab Act.  29 U.S.C. § 794a(a)(2).

### THIRD CLAIM

### Unruh Civil Rights Act ("Unruh Act")

44. California Civil Code § 51 states, in part, that: "All persons within the jurisdiction of this state are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

45. California Civil Code § 51.5 also states, in part, that: "No business establishment of any kind whatsoever shall discriminate against any person in this state because of the disability of the person."

46. California Civil Code § 51(f) specifically incorporates (by reference) an individual's rights under the ADA into the Unruh Act.

47. Defendants' acts and omissions denied the physically disabled (*e.g.*, Mihan's) full and equal accommodations, advantages, facilities, privileges and services in a business establishment (*viz.*, the Hospital) because of a physical disability; and violated her rights under the ADA.  Defendants denied, aided or incited a denial, or discriminated against Mihan under the Unruh Act.

48. Mihan seeks statutory minimum damages of four thousand dollars ($4,000) <u>for each violation</u> of the Unruh Act, as set forth in California Civil Code § 55.56, and to enjoin Defendants from violating the Unruh Act under California Civil Code § 52.

49. Mihan also seeks attorneys' fees under California Civil Code § 52(a).

## FOURTH CLAIM

## California's Disabled Persons Act ("CDPA")

50. California Civil Code § 54 states, in part, that: "Individuals with disabilities have the same right as the general public to the full and free use of the streets, sidewalks, walkways, public buildings and facilities, and other public places."

51. California Civil Code § 54.1 also states, in part, that: "Individuals with disabilities shall be entitled to full and equal access to accommodations, facilities, telephone facilities, places of public accommodation, and other places to which the general public is invited."

52. Both sections specifically incorporate (by reference) an individual's rights under the ADA. *See* Calif. Civil Code §§ 54(c) and 54.1(d).

53. Here, Defendants discriminated against the physically disabled (*e.g.*, Mihan) by denying her full and equal access to the Hospital; and violating her rights under the ADA. Defendants, thus, infringed upon or violated (or both) Mihan's rights under the CDPA.

54. Mihan seeks statutory minimum damages of one thousand dollars ($1,000) <u>for each violation</u> of the CDPA, as set forth in California Civil Code § 55.56; and to enjoin Defendants from violating the CDPA under California Civil Code § 55.

55. Mihan also seeks attorneys' fees under California Civil Code §§ 54.3 and 55.

## PRAYER FOR RELIEF

WHEREFORE, Mihan prays judgment against Defendants for:

1. Injunctive relief, preventive relief, or any other relief the Court deems proper.

2. Declaratory relief that Defendants violated the ADA for damages under the Unruh Act and/or California Disabled Persons Act.

3. Statutory minimum damages under either sections 52(a) or 54.3(a) of the California Civil Code (but not both) according to proof.

4. Attorneys' fees, litigation expenses, and costs of suit.

5. Interest at the legal rate from the date of the filing of this action.

DATED: June 21, 2016         DISABLED ADVOCACY GROUP, APLC

*/s/ Scottlyn Hubbard                /*
Scottlynn Hubbard
Attorney for Plaintiff

Complaint